UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br>    v.<br><br>THOMAS WEATHERS, KATHY WEATHERS, TKW LIMITED PARTNERSHIP, T&K WEATHERS LIMITED, COWLITZ COUNTY, MOUNTAIN PEAK MGMT. CORP., FINANCIAL ASSISTANCE, WAPITI VENTURES LLC, MARLENE M. BENNETT as Trustee of the MARLENE M. BENNETT REVOCABLE LIVING TRUST, PRECISION PROP. MGMT. CORP., NETFUNDING INC., CORAL MGMT. INC., and SOUTHWIND SOFTWARE AND DEVELOPMENT CORP.<br><br>                  Defendants. | CASE NO. C18-5189 RJB<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment. Dkt. 55. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

For the reasons set forth below, the Court should deny Defendants' Motion for Partial Summary Judgment (Dkt. 55).

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. FACTS

On June 28, 2005, Defendants Tom and Kathy Weathers ("Weathers") were convicted of tax evasion for 1996 and failure to file income tax returns for 1998 through 2002. Dkt. 55, at 4. On October 25, 2005, through the assistance of a Washington attorney, Mr. Bryce Townley, Weathers formed 911 Management, LCC ("911"). Dkt. 55, at 4. The members of 911 were T&K Weathers, LLP[1] (25%), Kathy Weathers (35%), and Club Ed[2] (40%). Dkt. 55, at 4.

In 2007, the Internal Revenue Service ("IRS") issued three levies totaling $198,689 against 911's bank account under an alter ego / nominee claim for taxes the Weathers owed for the 1996 tax year. Dkts. 55, at 5; and 58, at 3. The IRS apparently had evidence that Weathers used 911 to conceal income they received from managing hotels in Oregon and rental properties in Washington. Dkt. 59, at 3.

In 2008, 911 brought an action against the United States of America ("United States") in Oregon, challenging the IRS levies on its bank account. Dkt. 58, at 3; *911 Mgmt., LLC v. United*

---

[1] Tom and Kathy Weathers are the general partners of T & K Weathers, LLP, which was formed on March 27, 1996. There are five limited partners: (1) the Thomas D. Weathers and Kathy J. Weathers Family Trust, UA DTD February 26, 1996; (2) Brian D. Weathers Irrevocable Trust, UA DTD March 21, 1996; (3) Katie B. Weathers Irrevocable Trust, UA DTD March 21, 1996; (4) Kayla D. Weathers Irrevocable Trust, UA DTD March 21, 1996; and (5) Bradley M. Weathers Irrevocable Trust, UA DTD March 21, 1996. Brian Weathers, Katie Weathers, Kayla Weathers, and Bradley Weathers are the children of Tom and Kathy Weathers.

*911 Mgmt., LLC v. United States,* 657 F. Supp. 2d 1186, 1189 (D. Or. 2009) (citations and quotations omitted).

[2] "Club Ed purportedly provided educational benefits to its members. Its members consisted of the following: three members of the Weathers family; Thomas Weathers' cellmate; and the nephew of Daniel Dent, who was 911 Management's manager." Dkt. 58, at 4.

*States,* 657 F. Supp. 2d 1186, 1187 (D. Or. 2009) ("the Levies Case").[3] The court noted that the IRS may levy on property held by a third party to collect a taxpayer's debt if, among other circumstances, the third party is the taxpayer's nominee or alter ego. *911 Mgmt., LLC,* 657 F. Supp. 2d at 1911.

The IRS asserted that 911 Management was the nominee or alter ego of Weathers. *911 Mgmt., LLC,* 657 F. Supp. 2d at 1187. The court, after considering several factors, concluded that "911 Management is the alter ego of the Weatherses." *Id.* at 1215. The court apparently made no determination that T&K Weathers LLP or any other business entity besides 911 was, or was not, a nominee or alter ego of the Weathers. *See id.*

**B. PROCEDURAL HISTORY**

In March 2018, the United States brought this action before the Court for two purposes. Dkt. 58, at 5. First, the United States seeks to reduce to judgment federal tax assessments against the following: (1) Thomas and Kathy Weathers for debts owed from tax years 1998 through 2011; (2) TKW Limited Partnership for debts owed from 1998 through 2002, 2006, and 2011; and (3) T&K Weathers Limited for 1999 through 2002 and 2006 through 2011. Dkt. 58, at 5–6.

Second, the United States seeks to foreclose the related federal tax liens against nine properties in Washington and to obtain an order directing the Weathers to sell property in Belize to partially satisfy the outstanding assessments against the Weathers from 1998 through 2011. Dkt. 58, at 6. The United States alleges that the Weathers own, or have an interest in, each of the properties at issue through entities, including the Defendant entities, that serve as the Weathers'

---

[3] Defendants request that the Court take judicial notice of the Findings and Recommendations of Judge Hubel, as adopted by Judge King, reported as *911 Management, LLC v. U.S.,* 957 F. Supp. 2d 1186 (2009); the Order Adopting Judge Hubel's Findings and Recommendation in the same case; and the Judgment entered in the case on September 10, 20019. Dkt. 56, at 2. The Court has done so, finding that Defendants have so requested and that the Court is supplied with the necessary information.

nominee or alter ego to the extent the entities have possessed title to or interests in the properties. Dkt. 58, at 6.

Defendants move for partial summary judgment of dismissal of the United States' foreclosure claims (Counts 6–15[4]) against certain properties in Washington (Properties 1–9) and Belize. Dkt. 55. Those claims are as follows:

> (a) Count 6, to foreclose federal tax liens on Property 1, currently held by T&K Weathers, LLP,[5] as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (b) Count 7, to foreclose federal tax liens on Property 2, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (c) Count 8, to foreclose federal tax liens on Property 3, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (d) Count 9, to foreclose federal tax liens on Property 4, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (e) Count 10, to foreclose federal tax liens on Property 5, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (f) Count 11, to foreclose federal tax liens on Property 6, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.
>
> (g) Count 12, to foreclose federal tax liens on Property 7, currently held by Net Funding or T&K Weathers, LLP, as to any and all

---

[4] In Counts 1–5, the United States seeks to reduce to judgment unpaid federal taxes owed by various Defendants. Dkt. 1, at 31–33.

[5] References to Defendant entities in the record are not a model of clarity. The captions list "T&K WEATHERS LIMITED"; elsewhere, such as in the complaint's introduction, the United States refers to "T&K Weathers Limited Partnership ('T&K Weathers')" (Dkt. 1, at 2); above, in the instant motion for partial summary judgment, Defendants refer to "T&K Weathers, LLP" (Dkt. 55, at 2–3). The Court construes as one and the same: T&K WEATHERS LIMITED (e.g., from the caption); T&K Weathers Limited Partnership (e.g., from the complaint's introduction); T&K Weathers (e.g., as abbreviated in the complaint); and T&K Weathers, LLP (e.g., from the instant motion for partial summary judgment). The Parties should clarify the identity of Defendant entities as needed.

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.

    (h) Count 13, to foreclose federal tax liens on Property 8, currently held by T&K Weathers, LLP, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.

    (i) Count 14, to foreclose federal tax liens on Property 9, currently held by Precision Property Management Corporation, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.

    (j) Count 15, to foreclose federal tax liens on any Belize Property, as to any and all federal tax liens relating to Tom Weathers, Kathy Weathers, or both of them.

Dkt. 55, at 2.

In their motion for partial summary judgment, Defendants argue that, pursuant to the doctrine of claim preclusion, the United States is barred from bringing Counts 6–15 in the present case. Dkt. 55.

The United States responded in opposition to Defendants' motion for partial summary judgment. Dkt. 58. The United States argues that (1) "the circumstances of the levy case and this case do not meet the standard for claim preclusion," and (2) "the United States is not required to assert a tax collection claim as a counterclaim." Dkt. 58, at 7, 15. The Defendants replied to the United States. Dkt. 65.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**B. CLAIM PRECLUSION**

The doctrine of claim preclusion, or *res judicata*, bars any future claims that were raised, or could have been raised, in a prior action. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244

F.3d 708, 713 (9th Cir. 2001). "Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 899 (9th Cir. 2001) (citation omitted).

The United States disputes elements one and four. Dkt. 58, at 7.

1. <u>The Parties are Identical or in Privity</u>

Defendants argue that, because the court in the Levies Case found that 911 was the alter ego or nominee of the Weathers, 911 is in privity with the Defendants in this case. Dkt. 55, at 10–11.

> [The <u>Levies</u> court held that 911 Management, LLC was the alter ego of Thomas and Kathy Weathers and liable for the Weathers' income tax liabilities. This means that the Weathers and 911 Management were one and the same or identical with one another. In the present lawsuit, the United States alleges that Defendants are the alter ego of Thomas and Kathy Weathers. In other words, the United States argues that the Weathers and Defendants are one and the same or identical to one another. Certainly, the Weathers and Defendants are at the very least in privity based on Plaintiff's allegations.
>
> However, Defendants do not concede that they are alter egos of the Weathers. They merely assert that, pursuant to Plaintiff's allegations, Defendants are the same as or in privity with the Weathers for claim preclusion purposes. In other words, Plaintiff's allegations establish privity for purposes of claim preclusion and the Motion.

Dkt. 65, at 2.

Defendants' argument that the Parties are identical or in privity is without merit. Although the <u>Levies</u> court found that 911 was the alter ego and nominee of the Weathers and was considered to be the management of T&K Weathers LLP ("T&K"), a Defendant here, the

court did not find that T&K or the other named Defendants were an alter ego or nominee of the Weathers. *See 911 Mgmt., LLC,* 657 F. Supp. 2d 1186.

Therefore, the Parties in both suits are not identical or in privity.

2. <u>The Same Claim or Cause of Action in Both Suits</u>

To determine whether an action involves the same claim or cause of action as a prior action, courts consider four factors: (1) whether rights established by the prior judgment would be impaired by prosecution of the second action; (2) whether both actions present substantially the same evidence; (3) whether both actions involve infringement of the same right; and (4) whether both actions arise out of the same transactional nucleus of facts. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982) (quotation and citation omitted). "The last of these criteria is the most important." *Id.* at 1202.

> a. *Whether Rights Established by the Prior Judgment Would be Impaired by Prosecution of the Second Action*

Defendants concede that "Plaintiff is correct that an inconsistent ruling in the present case will not impair rights established in the earlier action." Dkt. 65, at 3. Indeed, prosecution of this action has no effect on the judgment rendered in the Levies Case.

> b. *Whether Both Actions Present Substantially the Same Evidence*

There are substantial differences between the evidence presented and to be presented in the two cases. The Levies Case determined the propriety of IRS levies on 911's bank account under an alter ego and nominee theory. *See 911 Mgmt., LLC,* 657 F. Supp. 2d 1186. The instant case involves tax debt and foreclosure claims against property in Washington and Belize. Additionally, the Weathers' purported control of different entities, named as Defendants here, besides 911 (and T&K to some degree) were not primary issues in the Levies Case. Therefore, the evidence in the two cases differs substantially.

*c. Whether Both Actions Involve Infringement of the Same Right*

The Unites States argues:

> [L]evies and foreclosures are distinct tax collection tools governed by different sections of the Tax Code. *See United States v. National Bank of Commerce,* 472 U.S. 713, 720–21 (1985); *see also United States v. Zurn,* 432 Fed. Appx. 686, 687 (9th Cir. 2011) (noting specific difference between tax levy proceedings and lien foreclosure suits).

Dkt. 58, at 13.

Defendants argue that "both actions involve the IRS' seizure or attempted seizure of property it asserts is actually held by (through an alter ego and nominee) and belongs to the Weathers …. This is an infringement of the same right regardless of the form of the IRS' collection action." Dkt. 65, at 5.

There exists between the two cases a common thread of the Weathers, T&K, the United States, taxes, purported ownership rights, business entities and corresponding theories of alter ego and nominee liability—however, the properties and rights at issue are substantially different. There are substantial differences between 911's rights in the Levies Case regarding IRS levies on its bank account and, here, any rights the Parties may have, including foreclosure, regarding the properties in Washington and Belize. Therefore, the two cases involve the alleged infringement of different rights.

*d. Whether Both Actions Arise Out of the Same Transactional Nucleus of Facts*

"When considering whether a prior action involved the same nucleus of facts for preclusion purposes, [the court] must narrowly construe the scope of that earlier action." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 953 (9th Cir. 2002) (quotation omitted).

Defendants argue:

> Both cases involve the United States' attempts to collect the Weathers' income tax liability through alter ego and nominee claims against property held by others; property which Plaintiff asserts belongs to the Weathers. Both cases involve the Weathers' transfer of the Washington properties to the Weathers' Family Trust and an irrevocable trust for each of their four children. Both cases involve the formation, ownership, and management of T&K Weathers, LLP.
>
> Both cases involve real property and business entities purportedly owned and managed by the Weathers. The real properties and business entities in the present suit included the identical properties and business entities involved in Lawsuit #1. Both cases involve how or whether those properties might be subject to IRS collection actions against the Weathers. In both cases, the United States is asserting alter ego, nominee, and transferee liability claims against various entities which it asserts are indistinguishable from the Weathers.

Dkt. 65, at 5–6.

Defendants' argument incorrectly generalizes the two cases, obfuscating clear distinctions between them. The transactional nucleus of facts in the Levies Case pertained to 911's income and how it was used, with some examination of T&K's management. *See 911 Mgmt., LLC,* 657 F. Supp. 2d 1186. Here, the transactional nucleus of facts pertains to the Defendants (which do not include 911) and their relationship and actions with respect to property in Washington and Belize.

Applying the narrow approach proffered in *Delta Water Agency*, the Court concludes that the actions of the two cases do not arise out of the same transactional nucleus of facts.

  e. Conclusion

Each of the four factors analyzed above weigh against Defendants. Therefore, the Court concludes that there does not exist between the two cases the same claim or cause of action.

3. Conclusion

Defendants' theory of claim preclusion is flawed because (1) the Parties in the two cases are not identical or in privity and (2) the same claims or causes of action are not involved in both suits.

**C. COMPULSORY COUNTERCLAIM**

> A pleading must state as a counterclaim any claim that – at the time of service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).

To the extent that Defendants argue that the United States foreclosure claims were compulsory counterclaims not raised in the Levies Case, that argument is without merit. The United States' claims in the instant case do not arise out of the same transaction or occurrence of 911's wrongful levy claim in the Levies Case. Even if they did, it appears that the United States would not have been required to bring the instant foreclosure claims as counterclaims in the Levies Case. *See Gustin v. United States*, 876 F.2d 485, 490 n.1 (5th Cir. 1989) (citing *Pfeiffer Co. v. United States*, 518 F.2d 124, 128–29 (8th Cir. 1975)) ("The strictures of Fed. R. Civ. P. 13 simply do not apply to counterclaims for delinquent taxes. If the timing and forum are not to the government's liking, the government need not bring the counterclaim.")); *see also United States v. RAJMP, Inc.*, 2018 WL 5920145, at *2–3 (S.D. Cal. Nov. 13, 2018) (finding that tax collection claims were not compulsory counterclaims in prior refund suit involving the same tax years).

### III. ORDER

Therefore, it is hereby **ORDERED** that Defendants' Motion for Partial Summary Judgment (Dkt. 55) is **DENIED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 8th day of April, 2019.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge